UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY L. BAUER,                    Civil Action No.: 19-11570
                                     Honorable Matthew F. Leitman
                    Plaintiff        Magistrate Judge Elizabeth A. Stafford

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 14, 15]

Plaintiff Tiffany Bauer appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying her application

for disability insurance benefits (DIB) under the Social Security Act.  Both

parties have filed summary judgment motions, referred to this Court for a

report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review

of the record, the Court finds that the administrative law judge's (ALJ)

decision is not supported by substantial evidence, and thus

**RECOMMENDS** that:

- Bauer's motion [ECF No. 14] be **GRANTED**;

- the Commissioner's motion [ECF No. 15] be **DENIED**; and

- the matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and recommendation.

## I.   BACKGROUND

### A.   Bauer's Background and Disability Applications

Born September 12, 1969, Bauer was 47 years old on March 31, 2017, her date last insured (DLI) for DIB purposes.  [ECF No. 7-2, PageID.52, 58].  When she applied for benefits in November 2016, she had no past relevant work.  [*Id.*, PageID.50, 52].  Bauer claimed to be disabled from chronic back pain, autoimmune category; chronic wide-spread pain; fibromyalgia; neuropathy; migraines; osteoarthritis; and hand tremors. [ECF No. 7-3, PageID.101-102].

After the Commissioner denied her disability application initially, Bauer requested a hearing, which took place in May 2018, and during which she and a vocational expert (VE) testified.  [ECF No. 7-2, PageID.70-99].  In a July 2018 written decision, the ALJ found Bauer not disabled. [*Id.*, PageID.50-59].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Bauer timely filed for judicial review.  [*Id.*, PageID.24-27; ECF No. 1].

2

**B.     The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[1]  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age,

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Bauer was not disabled.  At the first step, she found that Bauer had not engaged in substantial gainful activity from April 11, 2015, the alleged on-set date, to the March 31, 2017  DLI.  [ECF No. 7-2, PageID.52].  At the second step, the ALJ found that Bauer had the severe impairments of "fibromyalgia, degenerative disc disease, degenerative joint disease of the bilateral upper extremities and right lower extremity, bilateral foot pain/Morton's neuroma, bilateral plantar fasciitis, and mild right carpal tunnel syndrome."  [*Id.*].  The ALJ found non-severe Bauer's impairments from migraines, hyperlipidemia, depression, anxiety, hyperthyroidism, bunions status-post surgery, vitamin D deficiency, and right-foot hammertoe with capsulitis.  [*Id.*]  Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, PageID.54].

Between the third and fourth steps, the ALJ found that Bauer had the

4

RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a)
> except: [s]he can occasionally lift up 20 pounds; frequently lift
> up to 10 pounds; stand or walk up to 4 hours in an 8-hour
> workday; and sit up to 6 hours in an 8-hour workday. She is
> further limited to occasionally climbing ramps and stairs; never
> climbing ladders, ropes, and scaffolds; frequently balancing,
> stooping, kneeling, crouching, and crawling; and frequently
> handling, fingering, and feeling with the right dominant upper
> extremity….[S]he can never operate foot controls with the
> bilateral lower extremities.

[*Id.*].  At step four, the ALJ found that Bauer had no past relevant work.

[*Id.*, PageID.58].  At the final step, after considering her age, education,

work experience, RFC, and the testimony of the VE, the ALJ determined

that there were jobs that existed in significant numbers that Bauer could

perform, including positions as assembler, packer, and inspector.  [*Id.*,

PageID.58-59].  The ALJ thus concluded Bauer was not disabled.  [*Id.*,

PageID.59].

## II.    ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was

made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc.*

*Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more

5

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Bauer argues that the ALJ committed reversible error by improperly evaluating her fibromyalgia. She contends that the ALJ wrongly relied on the lack of objective medical evidence to find her claim of disability not fully credible and to discount the weight given to her treating physicians' opinions. The Court agrees with Bauer's claims of error and recommends that this matter be remanded for further consideration.

### B.

Before addressing the ALJ's evaluation of Bauer's claim, the Court will discuss the legal standards and precedent about claims involving fibromyalgia.

Generally, ALJs are required to evaluate subjective symptoms, including complaints of pain, by confirming that objective medical evidence of the underlying condition exists and determining whether that condition

6

could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304. The ALJ then assesses any work-related limitations by determining the intensity, persistence and limiting effects of these symptoms. *Id.*

The nature of fibromyalgia complicates this analysis. *Cooper v. Comm'r of Soc. Sec.*, 13-cv-11883, 2014 WL 4606010, at *16 (E.D.Mich., June 17, 2014). In fibromyalgia cases, objective evidence is often unavailing, and overemphasis on it is inappropriate. *Id.*; *Shahin v. Saul*, 18-cv-12939, 2020 WL 38931, at *3 (E.D.Mich., Jan. 3, 2020). Courts in this circuit have routinely remanded matters "because of the ALJ's undue emphasis on the lack of objective evidence." *Cooper*, 2014 WL 4606010, at *16 (collecting cases). Normal findings are not necessarily inconsistent with fibromyalgia, so considerations of normal gait, normal motor strength, non-tender extremities, normal sensation, and normal musculoskeletal range of motion are "'simply beyond the point.'" *Madinger v. Comm'r of Soc. Sec.,* No. 2:16-CV-882, 2019 WL 5091958, at *6 (S.D. Ohio Oct. 11, 2019) (citation and quotation marks omitted).

Thus, when "objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally

limiting effects of symptoms" of the claimant's fibromyalgia, an ALJ must

consider "all of the evidence in the case record, including the person's daily

activities, medications or other treatments the person uses, or has used, to

alleviate symptoms; the nature and frequency of the person's attempts to

obtain medical treatment for symptoms; and statements by other people

about the person's symptoms."  Social Security Ruling (SSR) 12-2p, 2012

WL 3104869 (July 25, 2012); *see also Luukkonen v. Comm'r of Soc. Sec.*,

653 F. App'x 393, 399 (6th Cir. 2016).  And because the absence of

objective evidence is of decreased relevance in a claim involving

fibromyalgia, the opinions of treating medical providers are more critical to

the evaluation of whether the claimant is disabled.  *Cooper*, 2014 WL

4606010, at *18 ("The diminished potency of traditional evidence has

heightened the importance of treating sources in fibromyalgia cases.").

In fact, under rules that apply to all Social Security disability cases for

application filed by March 27, 2017,[2] the opinions of treating physicians are

---

[2] For applicants who filed for DIB after March 27, 2017, their treating
physicians' opinions are not accorded controlling weight.  *See* 20 C.F.R. §
404.1520c.  But treating physicians' opinions about a claimant with
fibromyalgia should continue to carry special weight even under the new
rules given the lack of relevance of objective evidence.  When a claimant
alleges disability because of fibromyalgia, courts should continue to be
critical of ALJ decisions that rely more on the record-review opinions of
state agency experts than on opinions from treating physicians, especially
rheumatologists.

given the most weight and the opinions of non-examining sources are accorded the least weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)). And the opinion of a treating source should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for assigning that opinion less than controlling weight. *Gayheart,* 710 F.3d at 376-77.

If the ALJ finds that a treating physician's opinion is not entitled to controlling weight, she must give good reasons for the weight accorded to the opinion. *Id.* The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Id.* at 376. The ALJ must discuss certain factors: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of

9

the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*; 20 C.F.R. § 404.1527(c).

In *Rogers*, a seminal opinion about consideration of disability claims involving fibromyalgia, the court found that the ALJ erred by relying on the opinion of the state agency expert instead of the plaintiff's treating physicians. 486 F.3d at 244-46. The *Rogers* court found it significant that the treating physicians' records reflected continuous and frequent treatment for intense pain and stiffness; that the treating physicians arrived at the same diagnosis of fibromyalgia; and that one of the treating physicians was a rheumatologist, unlike the state agency record reviewer. *Id.* at 244-45.

The court emphasized that treating physicians' opinions were "of special significance given the unique nature of fibromyalgia," and criticized the ALJ for relying on the opinions of doctors who had not examined the plaintiff. *Rogers*, 486 F.3d at 245. The court also noted that "the foundation for the opinions offered" by those non-examining physicians "was the lack of objective findings." *Id.* "[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Id.*

10

The ALJ in *Rogers* had also wrongly relied on the lack of corroborating objective evidence to find the claimant's subjective complaints not fully credible.  *Id.* at 246-48.  Worse yet, the ALJ's falsely described the claimant as being "fairly active," and even the ALJ's mischaracterized version of the claimant's activities were "not comparable to typical work activities."  *Id.* at 248.

## C.

Like the ALJ in *Rogers*, the ALJ here erred in assessing Bauer's fibromyalgia and one of her treating physicians' opinions.  The ALJ afforded little weight to the opinions of Louis White, D.P.M., a treating podiatrist, and David Vallance, M.D., Bauer's treating rheumatologist, reasoning primarily that the opinions post-dated her DLI and were thus of limited probative value.  [ECF No. 7-2, PageID.55].  But retrospective opinions are entitled to the same deference given to treating physician opinions if they reflect the claimant's limitations during the period.  *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (ALJ required to consider retrospective opinion "to the extent that the opinion reflect[s] [claimant's] limitations before his date last insured."); *Terry v. Comm'r of Soc. Sec.*, No. 14-12274, 2015 WL 12712079, at *10 (E.D. Mich. July 14, 2015), *adopted* 2015 WL 5675746 (E.D. Mich. Sept. 28, 2015) (finding ALJ erred by rejecting

11

retrospective opinion because "[t]his is not a case where a treating physician who did not treat the claimant during the time period in question is offering such a retrospective opinion."); *Wladysiak v. Comm'r of Soc. Sec.*, No. 11-14494, 2013 WL 2480665, at *11 (E.D. Mich. June 10, 2013) (same).  For the opinion to receive deference, the treating physician offering it must have first-hand knowledge of the claimant's condition prior to the DLI.  *See Sulier v. Saul,* No. CV 19-11078, 2020 WL 4516845, at *4 (E.D. Mich. July 17, 2020), *adopted*, 2020 WL 4501797 (E.D. Mich. Aug. 5, 2020).

Both Drs. White and Vallance treated Bauer during the eligible period before her DLI.  [ECF No. 7-8, PageID.373-400, 551].  As noted by the ALJ, Bauer had a two-year gap between her visits with Dr. White, and he saw her only once between her alleged on-set date and her DLI.  [ECF No. 7-2, PageID.57; ECF No. 7-8, PageID.551].  Dr. White thus had minimal first-hand knowledge of her condition during the eligible period and the ALJ did not err in discounting Dr. White's opinion.  *See Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (substantial gaps in physician's treatment was sufficient support for discounting that treater's opinion).

The same is not true for Dr. Vallance.  Dr. Vallance said in his opinion that he examined and treated Bauer quarterly through 2015 and 2016 and

annually in 2017 and 2018, and that his opinion reflected Bauer's limitations beginning in 2014.  [ECF No. 7-8, PageID.593, 599].  The ALJ wrongly wrote that "Dr. Vallance was not providing the claimant any treatment at the time of the opinion."  [ECF No. 7-2, PageID.55].  In truth, Dr. Vallance examined Bauer during a 40-minute visit in March 2018, the day he prepared his opinion.  [ECF No. 7-8, PageID.593, 605-609].

Besides, the pertinent question is not whether Dr. Vallance was treating Bauer is 2018; it is whether he had first-hand knowledge before the DLI.  *Emard*, 953 F.3d at 850; *Terry*, 2015 WL 12712079 at *10; *Wladysiak*, 2013 WL 2480665 at *11.  Dr. Vallance saw Bauer for 40 to 60 minutes in August 2015, September 2015, December 2015, March 2016 and October 2016, during which he examined her, reviewed her labs and treatment options, and prescribed medication.  [ECF No. 7-7, PageID.373-377, 383-400].  He therefore had first-hand knowledge of her condition during the eligible period.  In her decision, the ALJ did not address whether Dr. Vallance's records during the relevant period were consistent with his retrospective opinion.  [ECF No. 7-2, PageID.56].  And when describing Dr. Vallance's records, the ALJ focused on the objective findings.  [*Id.*].  She wrote that, on examination, Bauer "had no significant findings in her hands or arms, her knees and hips were normal, [ ] her gait was within normal

13

limits," and her x-ray studies were generally unremarkable.  [ECF No. 7-2, PageID.56].   In the context of fibromyalgia, these relatively normal findings do not qualify as good reasons for discounting Dr. Vallance's opinion. *Rogers,* 486 F.3d at 244-46.

In addition to citing its retrospective status, the ALJ rejected Dr. Vallance's opinion because the ultimate decision of whether a claimant is disabled is reserved to the Commissioner.  [ECF No. 7-2, PageID.57].  This justification did not address the many critical functional assessments included in Dr. Vallance's opinion, most notably that she constantly experienced pain severe enough to interfere with concentration and attention; that she could sit, stand and walk for less than two hours in an eight-hour workday; that she should never crawl or crouch; and that she could only occasionally bend, stoop and kneel.  [ECF No. 7-8, PageID.593-599].  The ALJ ignored these portions of Dr. Vallance's opinion and failed to evaluate them under § 404.1527(c).

Specifically, the ALJ failed to assess the consistency of Dr. Vallance's opinion with his own records or with other evidence of record, including the records or opinions of other treating physician opinions, and she did not consider that Dr. Vallance is a rheumatologist.  The failure to consider these factors was error.  *See Gayheart,* 710 F.3d at 376-77 (when ALJ

14

failed to identify substantial evidence that was inconsistent with treating physician's opinion, the ALJ did not provide good reasons for not deferring to that opinion); *Rogers,* 486 F.3d at 244-45 (noting that treating rheumatologists' opinions generally carry more weight than opinions by non-examiners without that specialty).

The ALJ here made some of the very errors highlighted in *Rogers.* To start with, the ALJ gave great weight to the opinion of the state agency consultant and non-examiner, Robert Roschmann, M.D., and little weight to the opinion of Dr. Vallance, the treating rheumatologist.  [ECF No. 7-2, PageID.57].  The ALJ's single-sentence reason for giving great weight to Dr. Roschmann's opinion was that "it is consistent with the medical record," but the ALJ failed to explain the consistency of Dr. Roschmann's opinion with any other evidence in the record.  [*Id.*].  Dr. Roschmann's opinion is *not* consistent with the opinion of Dr. Vallance, and that is significant because the opinions of treating physicians, especially rheumatologists, are "of special significance given the unique nature of fibromyalgia."  *Rogers*, 486 F.3d at 245.

Another reason that the ALJ erred by giving the most weight to Dr. Roschmann's opinion is that the foundation of Dr. Roschman's RFC assessment was the lack of objective evidence.  [ECF No. 7-3,

PageID.108-111].   As noted, the *Rogers*' court disapproved of the ALJ giving greater weight to the opinions of non-examining physicians, as those opinions were based on the lack of objective findings.  *Rogers*, 486 F.3d at 245.  The ALJ here discounted Dr. Vallance's opinion in part because he saw Bauer "only sporadically during the relevant period," [ECF No. 7-2, PageID.57], but Dr. Vallance's knowledge of Bauer's limitations as assessed from five comprehensive examinations during the relevant period far exceeds the foundation for Dr. Roschmann's opinion.

Under these circumstances, the ALJ erred by giving little weight to Dr. Vallance's opinion and great weight to Dr. Roschmann's opinion.

**D.**

The ALJ's finding that Bauer's statements about the limiting effects of her fibromyalgia were "not entirely consistently with the medical evidence" also mirrors the erroneous findings in *Rogers*.  The ALJ noted that Bauer "showed moderate signs of fibromyalgia" in April 2015, according to Dr. White.  [ECF No. 7-2, PageID.55, citing ECF No. 7-7, PageID.276].  She recounted Bauer's report of constant foot pain, even when sitting, and that she could walk about 60 feet, stand for about 30 minutes, sit for about an hour, and lift just a few pounds.  [ECF No. 7-2, PageID.55].  The ALJ said that Bauer's pain was somewhat relieved by medical marijuana, but not her

16

TENS unit.  [*Id.*]  And the ALJ noted Bauer's complaints and treatment for low back pain.  [*Id.*, PageID.55-56].

To find that Bauer's statements were inconsistent with the medical evidence, the ALJ emphasized the lack of objective findings.

> [S]he had no significant findings in her hands or arms, her knees and hips were normal, and her gait was within normal limits.  A cervical spine x-ray was taken and showed mild degenerative change, primarily at C4-5. Lumbar x-rays the same date showed mild levoconvex curvature and degenerative change.  Bilateral hand x-rays also showed only mild degenerative changes.  Additionally, thoracic spine x-rays were taken, which demonstrated mild anterior spurring throughout the midthoracic spine.

[*Id.*, PageID.56].  The ALJ said that Bauer had no atrophy of the lower extremities and no gross sensory deficits.  [*Id.*].

Then, concluding her RFC analysis, the ALJ said, "Significantly, the record reflects only minimal to mild objective findings with respect to the claimant's severe impairments.  Examinations were often devoid of any significant findings and only conservative treatment was utilized for her complaints, suggesting that they may not have been as severe as alleged." [*Id.*, PageID.57].  She continued, "[T]he objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability."  [*Id.*].

The ALJ's emphasis on the lack of objective findings is in direct violation of the holdings of *Rogers* and other precedent going back more than 30 years.  *Rogers*, 486 F.3d at 243; *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.1988); *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D.Ohio 2003); *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 864 (6th Cir. 2011).   Over and over, courts have emphasized that "the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant, and more 'aggressive' treatment is not recommended for fibromyalgia patients."  *Kalmbach*, 409 F. App'x at 864.

Of further note, the ALJ said that her assessment of Bauer's RFC was supported by the "totality of the record," including Bauer's "activities of daily living."  [ECF No. 7-2, PageID.57].  The ALJ described Bauer's reported daily activities as doing light housework (which she spread out over several days), preparing simple meals, grocery shopping, going out to eat with her husband occasionally and caring for her dog.  [ECF No. 7-2, PageID.55].   "[T]hese somewhat minimal daily functions are not comparable to typical work activities,"  *Rogers*, 486 F.3d at 248, and the ALJ failed to explain why these activities are inconsistent with Bauer's

18

complaints of constant foot pain and back pain, or her alleged inability to walk, stand or sit for more than short periods of time.

The ALJ repeated yet another error described in *Rogers*; she overstated Bauer's level of activity.  Bauer did testify that she shopped for groceries, but she was often accompanied by her husband or daughter, and she traversed the store on an electric cart, not by walking.  [ECF No. 7-2, PageID.88-89].  She testified that she instructed the clerks to pack the bags light, and that her husband and children carried the bags into the house and unpacked the groceries.  [*Id.*].  Bauer testified that she walked 60 feet to the mailbox once or twice a month; her kids and husband usually got the mail.  [*Id.*, PageID.88].  She did not drive much, and her handicap sticker allowed her to park close to her destination.  [*Id.*, PageID.89-90].  Bauer testified that she could pick up her approximately ten-pound dog, but not often.  [*Id.,* PageID.87, 90].  She reported feeding and giving water to her dog, but that her daughter bathed the dog and took it outside.  [ECF No. 7-6, PageID.230].

The ALJ made no finding that Bauer's description of her daily activities was inconsistent with other evidence in the record or that is was not credible.  Even so, the ALJ concluded that Bauer's daily activities— limited to light housework, using an electric cart to grocery shop, occasional

19

lifting of a ten-pound dog, and occasional short walks to the mailbox or

from a handicap space—supported the RFC for lifting up to 20 pounds,

standing or walking for up to half a workday, and frequent balancing,

stooping, kneeling, crouching and crawling.   [ECF No. 7-2, PageID.54, 57].

The ALJ provides no "logical bridge to instruct the Court of her reasoning"

for her conclusion that Bauer's daily activities provide support for the

assessed RFC.  *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830

(E.D. Mich. 2017).

In sum, "the ALJ's description not only mischaracterizes [Bauer's]

testimony regarding the scope of her daily activities, but also fails to

examine the physical effects coextensive with their performance."  *Rogers*.

486 F.3d at 248-49.  The ALJ's decision should be reversed and remanded

for further consideration.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Bauer's motion [ECF No. 14] be **GRANTED**; that the Commissioner's

motion [ECF No. 15] be **DENIED**; and that this matter be **REMANDED** for

further consideration under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford_____
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 31, 2020

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

21

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 31, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
